## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILLIAM TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action: 1:23-cv-3601 |
| | § | |
| | § | With Jury Demand Endorsed |
| EQUIFAX INFORMATION SERVICES LLC, | § | |
| TRANS UNION LLC, PHH MORTGAGE | § | |
| CORPORATION, successor by merger | § | |
| to OCWEN LOAN SERVICING, LLC, and | § | |
| ONE MAIN FINANCIAL, Inc. | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, William Taylor ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Equifax Information Services LLC, Trans Union LLC, PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, and One Main Financial, Inc. jointly, severally, and in solido, states as follows:

### I.  INTRODUCTION

1.      Two of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendants, PHH Mortgage Corporation, successor by merger to Ocwen

Loan Servicing, LLC, and One Main Financial, Inc., are furnishers of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiff, William Taylor, is a natural person residing in Montgomery County, Alabama, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial

district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

5.    Upon information and belief, Defendant PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC which may also hereinafter be referred to as "Ocwen," "PHH," "Ocwen/PHH" "Ocwen d/b/a PHH," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a New Jersey Corporation, that does substantial business in this judicial district  and may be served by delivering a summons to its Legal Department at its headquarters, 1 Mortgage Way, Mount Laurel, New Jersey 08054 . Ocwen d/b/a PHH is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

6.    Upon information and belief, Defendant One Main Financial, Inc. which may also hereinafter be referred to as "One Main," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Texas Corporation, that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 6801 Colwell Blvd., Irving, TX 75039. One Main is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7.    As used herein, "consumer reporting agency," or "CRA," means any person which,

for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III. JURISDICTION AND VENUE

8.    Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9.    Venue is proper in this District, because CRA Defendants and PHH transact business in this District. PHH's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the District of New Jersey as further described. 28 U.S.C. § 1391.

10. Venue is further proper in this District, because CRA Defendants entered into agreements with PHH in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute(s) sent from the CRA Defendants as part of their reinvestigation was submitted to PHH's headquarters and investigated by the furnisher PHH using

PHH's resources located at or closely connected to this judicial district. PHH managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

### Background and Credit-Reporting Inaccuracies for the Ocwen Mortgage Account

11.    Upon information and belief, in or around May 2006 Plaintiff secured a mortgage for his property located at 954 Hugh St., Montgomery, AL 36108.

12.    Sometime thereafter, Ocwen Loan Servicing, LLC acquired Plaintiff's mortgage loan and assigned loan number 709280xxxx, hereinafter ("Ocwen mortgage account").

13.    On April 21, 2017, Plaintiff filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiff's chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

14.    On July 16, 2017, Plaintiff Chapter 13 payment plan was confirmed. *See* Exhibit "A".

15.    On March 8, 2022, Plaintiff was discharged from his chapter 13 bankruptcy, and excepted from discharge Plaintiff's Ocwen Mortgage. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "B".

16.    On March 10, 2022, Sabrina L. McKinney, Trustee for Plaintiff's Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit "C".

17.    Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy

Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

18.    On or around April 11, 2022, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

19.    Throughout Plaintiff's Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Ocwen mortgage accounts

20.    Sometime thereafter, PHH Mortgage Corporation acquired Plaintiff's Ocwen mortgage and assigned loan number 954709280xxxx, hereinafter ("PHH mortgage account").

21.    After discharge, and to this day, Plaintiff still lives in the home and makes timely and regular mortgage payments to the now PHH Mortgage, has historically made timely and regular payments to both the Ocwen Mortgage and PHH Mortgage, even after Plaintiff's  bankruptcy, and plans on continuing to make timely and regular mortgage payments to the PHH Mortgage.

22.    Sometime in March 2023, Plaintiff obtained his three-bureau credit report and noticed that the Equifax, Experian, and Trans Union credit report(s) were not accurate. A redacted copy of Plaintiff's three-bureau credit report is attached hereto as Exhibit "D".

23.    Within the Equifax credit report Plaintiff noticed that it reported the Ocwen mortgage account with a derogatory account rating, as being in a wage earner plan, and with references to his chapter 13 bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Ocwen mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the Ocwen Mortgage tradelines after the Bankruptcy

was discharged. [1]

24.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

25.     Within the Experian credit report Plaintiff noticed that it reported the Ocwen mortgage account with a derogatory account rating, as being in a wage earner plan, as possibly discharged through bankruptcy, and with references to his chapter 13 bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Ocwen mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the Ocwen Mortgage tradelines after the Bankruptcy was discharged. [2]

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.
[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy

26.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

27.     Within the Trans Union credit report Plaintiff noticed that it reported the Ocwen mortgage account with a derogatory account rating, as open, as being in a wage earner plan, and with references to his chapter 13 bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Ocwen mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the PrimeLending Mortgage tradelines after the Bankruptcy was discharged.  Further, the Ocwen loan was closed[3]

28.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account

_____

reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.
[3] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

### Background and Credit-Reporting Inaccuracies for the One Main Account

29.     Upon information and belief, in or around March 2016 Plaintiff obtained a credit card with One Main and they assigned loan number 316333401511xxxx, hereinafter ("One Main account"). *See* Exhibit "D".

30.     On April 21, 2017, Plaintiff filed for a Chapter 13 bankruptcy. *See* Exhibit "A".

31.     On July 16, 2017, Plaintiff Chapter 13 payment plan was confirmed. *See* Exhibit "A".

32.     On March 8, 2022, Plaintiff was discharged form his chapter 13 bankruptcy. *See* Exhibit "B".

33.     On March 10, 2022, Sabrina L. McKinney, Trustee for Plaintiff's Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account where the only One Main account listed is a secured loan. There is no reference to this unsecured One Main loan. *See*

Exhibit "C".

34.     On or around April 11, 2022, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

35.     Throughout Plaintiff's Chapter 13 Bankruptcy, no payments were made to One Main account through the trustee and the unsecured One Main account is not listed in the Trustee's Final Report and Account. *See* Exhibit "C".

36.     Sometime in March 2023, Plaintiff obtained his three-bureau credit report and noticed that the Equifax and Trans Union credit report(s) were not accurate. *See* Exhibit "D".

37.     Within both the Equifax and Trans Union credit reports Plaintiff noticed that it reported the One Main account with a derogatory account rating, as being in a wage earner plan, and with references to his chapter 13 bankruptcy when this account was never included in the bankruptcy.

**Credit-Reporting Disputes and Investigation Allegations**

38.     In or around April 2023, Plaintiff sent direct disputes to Equifax, Experian, and Trans Union, and requested that the CRA Defendants investigate the reporting of the Ocwen and One Main accounts to the extent each appear inaccurately on the respective credit reports. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the respective inaccuracies on Plaintiff's credit reports concerning each disputed account.

39.     Within these dispute letters, Plaintiff described in great detail the issues and the misreporting following his bankruptcy and enclosed copies of either his bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax, Experian, and Trans Union, are attached hereto as Exhibits "E", "F", and "G",

respectively.

40.    Equifax responded to Plaintiff on May 17, 2023 and concerning both the Ocwen tradeline made the corrections. Concerning the One Main account, Equifax continued to report the same bankruptcy indicators.  A redacted copy of Equifax's Response to Plaintiff is attached hereto as Exhibit "H".

41.    Plaintiff then obtained an updated copy of his three-bureau credit report on June 8, 2023 and within the Equifax credit report Plaintiff noticed that the One Main tradeline was actually missing, presumably deleted rather than modified. A redacted copy of Plaintiff's June 8, 2023 Three-bureau Credit Report is attached hereto as Exhibit "I".

42.    Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the One Main  tradeline and gave no explanation as to why it failed to sufficiently update the One Main  tradeline when Plaintiff demonstrated this One Main loan was never included in or discharged through bankruptcy.

43.    Equifax's response(s) were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the One Main tradeline.

44.     Plaintiff sent a very clear dispute, and yet Equifax failed to make substantive changes to the disputed information, bankruptcy status, and/or account status.

45.    Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, continued to publish the inaccurate information regarding Plaintiff's One Main account and then inappropriately deleted the One Main account.

46.    Upon the Plaintiff's request to Equifax for verification and addition regarding the

One Main account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff's with a response communicating the results. Further, Equifax did not make any attempt to substantially or reasonably verify the One Main account.

47.    In the alternative, and in accordance with Equifax's standard procedures, Equifax failed to contact One Main, therefore, failed to perform any investigation at all.

48.    In the alternative to the allegation that Equifax failed to contact One Main, it is alleged that Equifax did forward some notice of the dispute to One Main, and One Main and Tower Loan failed to conduct a lawful investigation.

49.    Experian responded to Plaintiff on May 17, 2023 and fixed the reporting of the Ocwen account. A redacted copy of Experian's Response to Plaintiff's Dispute Letter is attached hereto as Exhibit "J".

50.    Trans Union responded to Plaintiff on May 20, 2023 and concerning the Ocwen account continued to report the inaccurate bankruptcy information and concerning the One Main account stated that the account was deleted. A redacted copy of Trans Union's Response to Plaintiff is attached hereto as Exhibit "K".

51.    Plaintiff then obtained an updated copy of his three-bureau credit report on June 8, 2023 and within the Trans Union credit report Plaintiff noticed that the Ocwen tradeline continued to report with a derogatory account rating, as being in a wage earner plan, and with references to his chapter 13 bankruptcy despite his Ocwen mortgage being transferred to PHH and both mortgage loans being excepted from discharge. Plaintiff also noticed that concerning the One Main tradeline,

it was indeed missing rather than modified. *See* Exhibit "I".

52.    Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Ocwen and One Main tradelines and gave no explanation as to why it failed to sufficiently update the Ocwen and One Main tradelines when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, and was successfully discharged.

53.    Plaintiff sent a very clear dispute(s), and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

54.    Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Ocwen account.

55.    Upon the Plaintiff's request to Trans Union for verification and addition regarding the Ocwen and One Main accounts, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Trans Union did not make any attempt to substantially or reasonably verify the Ocwen and One Main accounts.

56.    In the alternative, and in accordance with Trans Union's standard procedures, Trans Union failed to contact Ocwen and One Main, therefore, failed to perform any investigation at all.

57.    In the alternative to the allegation that Trans Union failed to contact Ocwen and One Main, it is alleged that Trans Union did forward some notice of the dispute to Ocwen and One Main,

and Ocwen and One Main failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

58.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

59.    Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

60.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

61.    Plaintiff furnished Equifax the necessary documentation supporting Plaintiff's tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiff.

62.    Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

63.    After Equifax knew or should have known Plaintiff's account statuses in relation to his bankruptcy was inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the One Main account to be deleted.

64.    As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of

credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

65.    Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

66.    The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

67.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

68.    Equifax violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

69.    As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

70.    Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the

Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

71.    The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

72.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

73.    Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

74.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

75.    Plaintiff furnished Trans Union the necessary documentation supporting Plaintiff's tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

76.    Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

77.    After Trans Union knew or should have known Plaintiff's account statuses in relation to his bankruptcy was inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the One Main account to be deleted.

78.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

79.    Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

80.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IV – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

81.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

82.    Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

83.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

84.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for

actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

85.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.


### COUNT V – PHH'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

86.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

87.    Defendant PHH violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

88.    PHH further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Ocwen/PHH representation within Plaintiff's credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute(s) of the Ocwen/PHH representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Ocwen/PHH representations to the consumer reporting agencies.

89.    As a result of PHH's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to

purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

90.     PHH's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

**COUNT VI – ONE MAIN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

91.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

92.     Defendant One Main violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

93.     One Main further violated 15 U.S.C. § 1681s-2(b) by continuing to report the One Main representation within Plaintiff's credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute(s) of the One Main representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the One Main representations to the consumer reporting agencies.

94.     As a result of One Main's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the

ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

95.    One Main's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

96.    Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

97.    Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including New Jersey.

98.    Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

99.     The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

100.     Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

101.     Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

102.     Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

103.     Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, William Taylor, prays that this Honorable Court:

A.     Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services LLC**,** Trans Union LLC, PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, and One Main Financial, Inc.  jointly, severally, and in solido, for all reasonable

damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.    Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.    Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.    Order that the CRA Defendants, Equifax Information Services LLC and Trans Union LLC, and Furnisher Defendants, PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, and One Main Financial, Inc. work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E.    Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.


Date Filed: July 5, 2023

Respectfully submitted,

*s/ Matthew P. Forsberg*
Matthew P. Forsberg
NJ State Bar Number  360702021
Gloria C. Lam
NJ State Bar Number 286962018

Page 22 of 24

FCRA-NJ@fieldslaw.com
**FIELDS LAW FIRM**
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)


COUNSEL FOR PLAINTIFF

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

July 5, 2023                              _/s/ Matthew P. Forsberg_
Date                                     Matthew P. Forsberg